## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **VERNITA COLEMAN and JAYDA JAMES**, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO.: 3:25-cv-00133 |
| **RICHMOND REDEVELOPMENT AND HOUSING AUTHORITY**, | |
| Defendant. | |

### CLASS ACTION COMPLAINT

1.      The Richmond Redevelopment and Housing Authority ("RRHA"), the federally funded public housing authority for the City of Richmond, has systemically overcharged its poorest residents in violation of federal law by failing to offer and grant a hardship exemption to minimum rent. This is no accident. RRHA's practice is to hide the availability of the hardship exemption from potentially eligible residents. That makes this vital information functionally unavailable to the hundreds of RRHA residents on minimum rent.

2.      Unsurprisingly, RRHA can document only one instance since 2019 where a resident has even requested relief under the hardship exemption. And RRHA fails to grant the hardship exemption even when it knows or should know of a resident's eligibility for it.

3.      RRHA was created to help address the acute shortage of decent, affordable, and safe dwellings for low-income families in the Richmond area.

4.      Under federal law, RRHA determines the amount a resident should pay in rent based on the resident's income.

1

5.      For those who have no income or minimal income, RRHA is required to set a minimum rent of no more than $50 per month. RRHA has elected to impose a minimum rent and has set it at $50 per month.

6.      Over 600 RRHA residents paid minimum rent in 2024.

7.      If residents experience financial hardship, they are entitled to an exemption from that minimum rent requirement (the "Hardship Exemption").

8.      Under federal housing law, RRHA has a statutory duty to "immediately grant" a Hardship Exemption to qualifying residents.

9.       To fulfill its duty under federal law, RRHA must ensure eligible residents are aware of and able to request a Hardship Exemption and immediately grant the exemption when it is aware that a resident qualifies.

10.      But, in violation of these statutory requirements, RRHA fails to adequately inform qualifying residents of their right to a Hardship Exemption or grant the exemption when it is aware residents are eligible, depriving residents of a benefit they are entitled to under federal housing law and systemically overcharging its poorest residents (RRHA's "Illegal Overcharge Practice").

11.      As a result, of the hundreds of tenants paying minimum rent each year, only one tenant in the last five years has been granted the Hardship Exemption.

12.      When residents paying minimum rent experience financial hardship, RRHA's Illegal Overcharge Practice places them in an impossible position, where they must pay rent they cannot afford, forego other life necessities, or risk eviction and homelessness.

13.      Plaintiffs are the victims of the Illegal Overcharge Practice. They are current and former residents of public housing units owned, operated, and/or controlled by RRHA who have been overcharged rent as a result of RRHA's unlawful actions.

14.     Not only are the hundreds of families paying RRHA minimum rent unaware of their right to request a Hardship Exemption should they face financial hardship, many of those residents are facing financial hardship right now, yet are still paying minimum rent even though they are entitled to a Hardship Exemption.

15.     By failing to immediately grant Hardship Exemptions to qualifying residents and adequately and forthrightly inform residents of their right to request a Hardship Exemption, RRHA has violated federal law.

16.     Plaintiffs and the putative class seek declaratory, injunctive, and other relief to prevent RRHA from continuing its unlawful policy and to make whole the residents it has overcharged.

## PARTIES

17.     Plaintiff Vernita Coleman is a resident of RRHA public housing.

18.     Plaintiff Jayda James is a former resident of RRHA public housing.

19.     Plaintiffs seek to represent a class of current and former residents of public housing units owned, controlled, or operated by RRHA whose rent is now, has been, or will be set at the federally-authorized minimum rent. Class allegations are set forth below.

20.     Defendant RRHA is a locally administered and federally funded public housing authority ("PHA") in Richmond, Virginia. RRHA provides real estate development, rental housing assistance, and property management of public housing communities for low and moderate-income families throughout the City of Richmond.

21.     RRHA is the largest PHA in the Commonwealth of Virginia, serving over 10,000 residents and managing over 3,000 public housing units. RRHA is a Virginia political subdivision subject to the Virginia Housing Authorities Law, Va. Code § 36-1., *et seq*.

22.     RRHA, a public housing authority within the meaning of 42 U.S.C. § 1437, receives federal funds to operate the public housing program and is required to operate this program in compliance with applicable federal laws.

## JURISDICTION AND VENUE

23.     This Court has personal jurisdiction over RRHA because RRHA's principal place of business is in this District, it conducts business in this District, RRHA's activity that gives rise to Plaintiffs' claims has taken place and is continuing to take place in this District, and RRHA has continuous and systematic operations in this District.

24.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because this action arises under the laws and Constitution of the United States.

25.     The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the claims are substantially related to Plaintiffs' federal claims and arise out of the same nucleus of operative facts.

26.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

27.     Declaratory relief is authorized by 28 U.S.C. §§ 1343, 2201, and 2022, and injunctive relief is authorized by 42 U.S.C. § 1983.

## LEGAL FRAMEWORK

*Federal Law, Regulations, and Policies Governing Minimum Rent and the Hardship Exemption*

28.    Public housing, one of several types of federal housing assistance, was established under the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.* ("Housing Act") to promote the policy of "provid[ing] decent and affordable housing for all citizens." 42 U.S.C. § 1437(a)(4).

29.    Under the Housing Act, local PHAs like RRHA receive federal funds from the United States Department of Housing and Urban Development ("HUD") to provide public housing for low-income families.

30.    Public housing residents' rent must be determined based on their income.

31.    In 1969, Congress enacted the "Brooke Amendment," which limited each public housing resident's rent payment to no more than 25% of the household's monthly adjusted income. Housing and Urban Development Act of 1969, Pub. L. No. 91-152, § 213(a), 83 Stat. 389.

32.    In 1981, Congress modified the Brooke Amendment and raised public housing rent to the higher of 30% of the household's monthly adjusted income (calculated pursuant to 24 CFR § 5.611), 10% of its unadjusted monthly income, or the portion of the household's welfare assistance payment, if any, that is specifically designated for housing costs. Housing and Community Development Amendments of 1981, Pub. L. No. 97-35, § 322, 95 Stat. 400 (codified at 42 U.S.C. § 1437a(a)(1)).

33.    In 1998, Congress enacted the Quality Housing and Work Responsibility Act of 1998 ("QHWRA"). *See* Pub. L. No. 105-276, § 501 *et seq.*, 112 Stat. 2518 *et seq*.

34.    QHWRA, codified in the Housing Act, modified the Brooke Amendment Provisions at 42 U.S.C. § 1437a(a) to permit PHAs to impose monthly minimum rents of no more than $50, but required that PHAs grant "immediate" exemptions to that minimum rent in cases of

"financial hardship." *Id.*, § 507, 112 Stat. 2524-2525 (codified at 42 U.S.C. §1437a(a)(3)); *see also* 24 C.F.R. §§ 5.628(a) and 5.630(a).

35.    The Housing Act defines "financial hardship" to include, but not be limited to, situations in which: (1) the family has lost eligibility or is awaiting an eligibility determination for governmental assistance; (2) the family "would be evicted as a result of the imposition of the minimum rent requirement"; (3) the family's income has decreased because of changed circumstances; (4) there has been a death in the family, or (5) other situations as may be determined by the agency. 42 U.S.C. §1437a(a)(3)(B)(i).

36.    The Housing Act imposes an unqualified and mandatory obligation on PHAs to grant the Hardship Exemption, stating that a PHA "shall **immediately** grant an exemption from application of the minimum monthly rental . . . to any family unable to pay such amount because of financial hardship." *Id.* (emphasis added).

37.    If a financial hardship is temporary in nature, the Housing Act requires PHAs to observe a 90-day period during which PHAs may not evict residents for nonpayment of rent. 42 U.S.C. § 1437a(a)(3)(B)(ii). If the hardship is initially or subsequently determined to be long-term, however, the PHA must "retroactively exempt" the resident from the minimum rent requirement for such 90-day period. *Id.*

38.    The implementing regulations expressly state that in the event the hardship is long-term, the exemption continues "so long as such hardship continues." 24 C.F.R. § 5.630(b)(2)(iii)(B).

39.    The Hardship Exemption is codified in the Housing Act's implementing regulations. *See* 24 C.F.R. § 5.630(b)(1)(i)-(v), (b)(2).

40.    Through its policy directives, HUD has made clear PHAs should affirmatively notify tenants of their right to a Hardship Exemption and offer it to those who qualify.

41.    For example, in 2020, HUD issued a Fact Sheet reminding PHAs of their duty to offer tenants Hardship Exemptions. In it, they encourage PHAs to "Spread the Word" to "[e]nsure all tenants, property management staff and service coordinators are aware of . . . minimum rent Hardship Exemption policies." (emphasis in original omitted). It further instructed PHAs to "[e]ncourage property management staff and service coordinators to include this in information routinely sent to and discussed with residents, for example with rent reminder notices."[1]

42.    In 2021, HUD issued a "Public Housing Minimum Rent and Hardship Requirements Toolkit," which included suggested outreach templates for door hangers and postcards to residents. The accompanying instructional video stated that PHAs should communicate tenants' right to a Hardship Exemption at admission and reexamination, during direct conversations with families who have had a change in circumstance that may qualify them for the Hardship Exemption, and via door hangers, community bulletin boards, simple request forms, Fact Sheets/FAQs, and checklists.[2]

43.    A recent HUD regulatory change emphasizes the importance of the Hardship Exemption in preventing evictions. 24 C.F.R. §§ 247.4(e), 880.607(c)(6), 884.216(d), 966.4(l)(3)(ii). The modified regulations state that 30-day notices sent to public housing residents

---

[1] *See* U.S. Department of Housing and Urban Development, "Assisting Housing Choice Voucher and Public Housing Tenants in Reducing Accrual of Rent Owed," https://www.hud.gov/sites/dfiles/PIH/documents/PH_HCV_reducing_back_rent_accrual_factsheet.pdf.

[2] *See* HUD Exchange, Public Housing Minimum Rent and Hardship Requirements Toolkit, https://www.hudexchange.info/programs/public-housing/public-housing-minimum-rent-andhardship-exemption-requirements-toolkit.

who are behind on their rent must include "information on how the tenant can . . . request a Hardship Exemption." *Id.*

<u>RRHA's Practices Regarding the Hardship Exemption</u>

44.    HUD requires that each PHA administering a public housing program promulgate an Admissions and Continued Occupancy Policy ("ACOP"), which governs many aspects of public housing residents' tenancies.[3]

45.    RRHA's ACOP contains a section on "RRHA Procedures for Notification to Families of Hardship Exemptions." It states:

> RRHA recognizes that in some instances even the minimum rent may create a financial hardship for families. RRHA will review all relevant circumstances brought to the RRHA's attention regarding financial hardship as it applies to minimum rent. . . .
>
> RRHA will notify all participant families subject to a minimum rent of their right to request a minimum rent Hardship Exemption under the law. All notices of lease termination premised on nonpayment of rent shall notify the recipient family that if they are subject to minimum rent, they may qualify for the Hardship Exemption. . . . RRHA will review all tenant requests for exemption from the minimum rent due to financial hardships. All requests for minimum rent exemption are required to be made in writing.

46.    RRHA's ACOP also incorporates by reference applicable federal law, stating that:

> The administration of the RRHA's housing program will also meet the requirements of the Department of Housing and Urban Development (HUD), and all other law, whether currently in effect or later created or amended, which is applicable to the administration of RRHA's low-income public housing program (hereafter, individually and collectively, "applicable law"). Such applicable law may include, without limitation, the statutes of the United States and Virginia Codes, the regulations of the U.S. Code of Federal Regulations, and any HUD guidance or policy which carries the force and effect of law. This ACOP is expressly subordinate to all applicable law.

---

[3]  *See* Exhibit A, RRHA Admissions and Continued Occupancy Policy (ACOP) FY2024-2025,   https://www.rrha.com/wp-content/uploads/2024/11/RRHA-Final-Draft-ACOP-FY2024-2025_07-15-2024-_11-01-24.pdf.

47.     RRHA's rental leases explicitly incorporate its ACOP.[4]

48.     In addition, RRHA's rental leases state:

A hardship exists when circumstances beyond Tenant's control make Tenant unable to meet his financial obligations under the Lease. If you are a Tenant who is paying minimum rent and are experiencing hardship in paying your minimum rent, you must notify your property manager before the 8th of the month, or as soon as possible thereafter in the case of an emergency. Failure to do so may result in denying you the right to be considered for hardship exemption or payment agreement in accordance with your dwelling lease. **The hardship exemption applies only to the payment of minimum rent.** (emphasis in original.)

## FACTS

### RRHA's Illegal Overcharge Practice

49.     Despite the statutory and regulatory requirement that a PHA "shall immediately" grant a Hardship Exemption for those families who qualify, RRHA fails to adequately inform eligible residents of their right to request a Hardship Exemption.

50.     RRHA's practice of hiding the right to a Hardship Exemption deprives residents of a benefit they are entitled to under federal housing law and has resulted in the systematic overcharging of residents paying minimum rent.

51.     In furtherance of its Illegal Overcharge Practice, RRHA does not notify tenants of their right to the Hardship Exemption in any way reasonably calculated to actually inform them of the right to request an exemption.

52.     Information about the Hardship Exemption can be found only in two paragraphs of a dense, 35-page lease and buried on page 92 of RRHA's 342-page ACOP.

53.     Plaintiffs' investigation has not revealed any other means by which RRHA notifies tenants of their right to request a Hardship Exemption.

---

[4] *See* Exhibit B, RRHA Dwelling Lease, last updated September 2018.

54.    What is more, the Hardship Exemption information provided in the ACOP and lease is plainly deficient.

55.    Neither the ACOP nor the lease agreement clearly explains how residents can apply for the Hardship Exemption, identify any RRHA-generated forms tenants can use to initiate the process, or outline the review process RRHA uses when a request for a Hardship Exemption is made.

56.    Despite stating in its ACOP that it "will review all relevant circumstances brought to the RRHA's attention regarding financial hardship as it applies to minimum rent[,]" RRHA does not explain that process anywhere.

57.    RRHA has not notified tenants about their right to a Hardship Exemption in lease termination notices, even though RRHA's ACOP states that lease termination notices premised on nonpayment of rent shall notify the recipient family about the Hardship Exemption.

58.    In addition, RRHA fails to notify tenants about their right to a Hardship Exemption in recertification paperwork and in rent notices, even when tenants are paying minimum rent.

59.    When a tenant claims no income, RRHA often demands that they complete a form called a Zero Income/Minimal Income Worksheet ("Zero Income Worksheet"). On that form, tenants fill in detailed information about household spendings and expenses. RRHA does not notify tenants about their right to a Hardship Exemption in its Zero Income Worksheet.

60.    In short, RRHA fails to notify residents of their right to request a Hardship Exemption at the precise points in their tenancy when that information is most relevant to them and when they are providing information to RRHA demonstrating their financial hardship.

61.    Even when RRHA is on notice that a public housing resident is eligible for the Hardship Exemption, RRHA does not inform the resident of the existence of the exemption, or

their right to request one.

62.  Further, RRHA's ACOP states that a resident must request a Hardship Exemption in writing. This requirement violates federal housing law and policy, which states that residents do not need to fill out a form to request a Hardship Exemption, and which explicitly provides that PHAs must "immediately grant an exemption" to eligible residents.

63.  RRHA's policy and practice of keeping the Hardship Exemption secret by failing to inform tenants of their right to request this exemption ensures that eligible tenants are not offered Hardship Exemptions.

64.  The existence and effect of this Illegal Overcharge Practice and the harm it has caused to tenants on minimum rent are clear. Between 2019 and 2024, RRHA charged hundreds of tenants minimum rent. Many of those tenants likely qualified for the Hardship Exemption. Yet, during this period, only one RRHA tenant "requested" the Hardship Exemption in a manner recognized by RRHA. And, during this same period, the agency granted only one RRHA tenant the Hardship Exemption.

65.  This systemic failure to inform residents of their right to request a Hardship Exemption indicates that RRHA has failed to train or instruct its staff to inform residents of their right to request a Hardship Exemption, understand when residents should be notified of their rights to request an exemption, recognize when a Hardship Exemption is being requested or a resident qualifies for an exemption, or grant Hardship Exemptions to qualifying residents.

66.  Further, upon information and belief, RRHA has failed to exercise sufficient oversight over its staff to ensure the Hardship Exemption policies in its own ACOP are being implemented.

67.     Upon information and belief, RRHA has initiated eviction actions against families based on their failure to pay the minimum rent even when they would have qualified for a Hardship Exemption. Ignoring its statutory obligations under federal housing law, upon information and belief, RRHA failed to stop these eviction proceedings and evaluate those households' eligibility for the Hardship Exemption.

68.     Sadly, these failures are part of a broader problem with RRHA's processes for calculating rent.

69.     HUD audited RRHA in April 2023 and found that 66% of the public housing tenant files it sampled contained errors. Upon information and belief, RRHA has failed to remedy these substantial rental calculation errors.

70.     RRHA's policies have deprived hundreds of families (members of the putative class) each year of notice of their right to Hardship Exemptions to which they are entitled, and to the exemptions themselves for qualifying tenants. This has resulted in financial gain for RRHA and financial loss for the qualifying tenants.

71.     As a result of its Illegal Overcharge Practice, RRHA has violated federal law and charged or collected from its residents minimum rent payments, late fees, attorney fees, and costs to which RRHA was not entitled.

72.     RRHA's pursuit and collection of these amounts has caused severe financial strain, stress, and undue hardship for Plaintiffs and tenants charged minimum rent. What is more, residents have been threatened with eviction or rendered homeless, or have been threatened with the loss of, or lost, their public housing subsidy.

*Plaintiff Vernita Coleman*

73.    Plaintiff Vernita Coleman ("Ms. Coleman") has been an RRHA public housing resident since in or around July 2004.

74.    She resides in the unit located at 2149 North 29th Street, Richmond, VA 23223.

75.    Since 2020, Ms. Coleman has relied on Supplemental Security Income ("SSI") as her sole source of regular income due to her disability.

76.    Her monthly SSI benefits varied from $841 in 2022 to $943 in 2024.

77.    From mid-2020 until 2024, her monthly rent was set by RRHA at an amount between $225 and $264 per month, depending on her SSI income amount.

78.    In or around January 2024, Ms. Coleman's SSI benefits were suspended, which meant she had no regular income.

79.    Ms. Coleman told RRHA that she had no regular income.

80.    She reported this change to RRHA, and they performed an interim recertification to determine her new monthly rent.

81.    As part of that recertification, Ms. Coleman was asked to complete a Zero Income Worksheet. This worksheet asked such questions as how much money she spends monthly on toilet paper, sanitary napkins, and whether anyone in the household "has their nails done."

82.    Despite the fact that Ms. Coleman filled out a detailed accounting of her financial hardship on the Zero Income Worksheet, the Zero Income Worksheet did not contain any information about the Hardship Exemption.

83.    The RRHA employee who filled out the form with Ms. Coleman did not mention the Hardship Exemption or provide any information about the Hardship Exemption during that interaction.

84.    RRHA set Ms. Coleman's new rent at minimum rent, $50, effective February 1, 2024.

85.    RRHA sent Ms. Coleman a written notice that it was reducing her monthly rent to the minimum amount of $50.

86.    The notice RRHA sent Ms. Coleman did not inform her of her right to request a Hardship Exemption to the minimum rent requirement.

87.    Ms. Coleman could not afford the $50 minimum rent because she had no income. Paying the minimum rent caused her a financial hardship.

88.    Because of the financial hardship caused by the minimum rent, Ms. Coleman had to rely on her mother to help pay her rent.

89.    Based on the information Ms. Coleman provided on her Zero Income Worksheet and in other communications with RRHA, RRHA was aware of the financial hardship Ms. Coleman was experiencing.

90.    Ms. Coleman qualified for the Hardship Exemption. RRHA knew that Ms. Coleman qualified for a Hardship Exemption.

91.    RRHA should have immediately granted her a Hardship Exemption because "the family ha[d] lost eligibility for or [wa]s awaiting an eligibility determination for a Federal, State, or local assistance program." *See* 42 U.S.C. § 1437a(a)(3)(B)(i).

92.    But RRHA did not "immediately grant an exemption" from the minimum rent as it was required to do. *Id*.

93.    Ms. Coleman relied on RRHA's representation that she owed $50 in monthly rent. She paid that rent.

94.    As a result, Ms. Coleman paid more rent than she would have if RRHA had immediately granted her the Hardship Exemption.

95.    Ms. Coleman intends to maintain her tenancy in RRHA public housing and must be able to rely on the minimum rent Hardship Exemption if and when she needs it.

96.    For the duration of her tenancy, RRHA's policies and practices regarding notice and implementation of the minimum rent Hardship Exemption will impact Ms. Coleman's rent payments and ability to maintain her leasehold interest.

### *Plaintiff Jayda James*

97.    Plaintiff Jayda James ("Ms. James") was an RRHA public housing resident from in or around December 2022 to May 2024.

98.    She resided in the unit located at 2432 Carmine Street, Richmond, VA 23223 (the "RRHA Carmine Street Apartment").

99.    For the full time she resided at the RRHA Carmine Street Apartment, Ms. James was a full-time caregiver for her young child, who had significant medical needs. As a result, she could not work and had no income she could spend on rent other than nominal financial support from family.

100.    RRHA determined that Ms. James should pay the minimum rent.

101.    Ms. James was charged the $50 minimum rent for each full month she lived at the Carmine Street Apartment.

102.    Ms. James could not afford the $50 rent because she had no regular income she could spend on rent. She had to turn to family for help paying the rent.

103.    Nonetheless, Ms. James relied on RRHA's representation that she owed $50 in monthly rent. She paid that rent.

104.    While living at the RRHA Carmine Street Apartment, Ms. James experienced significant issues with mold and broken air conditioning.

105.    She told RRHA that paying out of pocket for solutions to these unfixed issues (on top of her monthly rental payment) was causing her financial hardship.

106.    As a result of this financial hardship, she could not afford to pay her rent and had to turn to occasional gifts from family for help in order to avoid falling behind and risking eviction.

107.    Ms. James qualified for the Hardship Exemption.

108.    As a result, Ms. James paid more rent than she would have if RRHA had immediately granted her the Hardship Exemption.

## CLASS ALLEGATIONS

109.    Named Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

110.    The proposed Rule 23(b)(2) and Rule 23(b)(3) class ("Proposed Class") is defined as:

> All current residents of RRHA-owned, operated, or controlled public housing units and all past residents of RRHA-owned, operated, or controlled public housing units who resided in those units at any point since February 2020, whose rent is now, has been during the last five years, or will be set at the minimum rent.

### *Certification of the Class*

111.    This action is properly maintainable as a class action because the requirements of Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure can be satisfied.

### Numerosity

112.    The membership of the Proposed Class is so numerous that joinder of all its members is impracticable. RRHA oversees over 3,000 public housing units in the City of Richmond, and more than 10,000 residents live in RRHA-owned properties.

16

113.    Last year there were at least 600 RRHA public housing residents on minimum rent. In 2023, there were 500 residents on minimum rent. For the prior four years at least 295 residents were on minimum rent each year.

114.    All of these residents—members of the Proposed Class—are entitled to have a lawful and effective Hardship Exemption policy and procedure in place should they experience financial hardship.

115.    The number of residents who have been, are now, or will be subject to RRHA's unlawful practices is too numerous for joinder.

116.    Joinder is also impractical because members of the Proposed Class lack financial resources and legal sophistication.

<u>Commonality</u>

117.    There are numerous issues of fact and law common to the members of the Proposed Class as a whole, including, but not limited to:

a.    Whether RRHA violated the federal mandate to immediately grant financial hardship suspensions and exemptions from the minimum rent when the facts warranting such exemptions are known or should be known to RRHA, 42 U.S.C. § 1437a(a)(3)(B);

b.    Whether RRHA violated the Housing Act by failing to effectively inform public housing residents of their right to request Hardship Exemptions to the minimum rent requirement or the procedures for exercising that right;

c.    Whether pursuant to the Due Process Clause of the Fourteenth Amendment RRHA is required to actively inform its residents about the right to request Hardship Exemptions to the minimum rent requirement in a meaningful and timely manner;

d.   Whether RRHA violated its residents' right to due process by failing to take steps that were reasonably calculated to inform them in a meaningful and timely manner of their right to request Hardship Exemptions to the minimum rent requirement

e.   Whether RRHA breached its public housing leases with class members by failing to offer and grant the Hardship Exemption; and

f.   Whether RRHA has been unjustly enriched by failing to offer and grant the Hardship Exemption.

<u>Typicality and Adequacy</u>

118.   The named Plaintiffs' claims are typical of those of the Proposed Class as a whole. All of the named Plaintiffs' claims arise from the same RRHA policies and practices. The named Plaintiffs do not present claims that are unique to themselves. Instead, they bring claims typical to the class members.

119.   Further, the named Plaintiffs will fairly and adequately protect the interests of the Proposed Class. The named Plaintiffs are represented by Hunton Andrews Kurth LLP, Legal Aid Justice Center, and the National Housing Law Project, whose attorneys are qualified, have litigated numerous federal and class actions, and thus have the requisite experience to represent the interests of the named Plaintiffs and class members.

120.   RRHA has acted on grounds applicable to the Proposed Class as a whole, making final declaratory and injunctive relief with respect to the class appropriate under Rule 23(b)(2).

121.   Members of the Proposed Class have been injured and will be injured by Defendants' failure to comply with the Housing Act.

<u>Predominance</u>

122.   Pursuant to Rule 23(b)(3), questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior

to other available methods for fairly and efficiently adjudicating the controversy. Further, the issues of fact and law above predominate over individualized questions such as the individual circumstances of each putative class member and the timing of their eligibility for any exemption to the minimum rent, making certification under Rule 23(b)(3) appropriate.

123.    This action may be maintained as a hybrid class under Rule 23(b)(2) and 23(b)(3), in which the Court certifies a Rule 23(b)(2) class with respect to the claims for injunctive or declaratory relief and a Rule 23(b)(3) class with respect to the monetary claims, and grants the right to opt out to class members regarding monetary relief.

<u>Injunctive & Declaratory Relief</u>

124.    Pursuant to Rule 23(b)(2), RRHA acted or refused to act on grounds that apply generally to the class as a whole and final injunctive relief and declaratory relief is appropriate.

125.    Plaintiffs predominantly seek injunctive and declaratory relief, and the monetary relief sought by Plaintiffs and class members is incidental to the injunctive and declaratory relief sought.

126.    Plaintiffs' requested injunctive and declaratory relief would settle the legality of RRHA's actions with respect to the class as a whole, and would benefit all class members at once.

127.    Without the issuance of injunctive relief, RRHA will continue to financially benefit, and tenants will continue to be forced to pay rent arrearages they do not actually owe, or face eviction.

<u>Superiority</u>

128.    A class action to resolve the issues presented by the class is superior to piecemeal resolution of claims.

129.    All class members are low-income and lack the resources to adjudicate their individual claims in court, where they would run a risk of disparate case results. RRHA's policies have been uniformly applied to the class.

Ascertainability

130.    Members of the proposed classes are readily ascertainable without the need for extensive and individualized fact-finding. RRHA's records can be used to identify all relevant current and former residents and their rental payment determinations.

**COUNT I - 42 U.S.C. § 1983**

**VIOLATION OF THE UNITED STATES HOUSING ACT**

131.    Plaintiffs repeat and reallege paragraphs 1 through 130, as if fully set forth herein.

132.    RRHA is a "person" within the meaning of 42 U.S.C. § 1983.

133.    Acting under color of state law and through its policies and customs, RRHA has violated, and continues to violate, Plaintiffs' and Proposed Class members' rights secured by 42 U.S.C. § 1437a(a)(3) by charging tenants rent in excess of the amount permissible under federal law.

134.    RRHA's actions reflect a practice of failing to provide residents meaningful, adequate, and timely notice of their right to request a Hardship Exemption to the minimum rent requirement, failing to adequately train its staff to inform residents of their right to request a Hardship Exemption, failing to immediately grant and failing to train its staff to immediately grant Hardship Exemptions when the facts warranting mandatory Hardship Exemptions are known to RRHA, and improperly pursuing eviction actions against residents for nonpayment of the minimum rent.

135.    Such policies, practices, and actions violate 42 U.S.C. § 1437a(a)(3)(B).

136.    As a result of RRHA's policies, practices, and actions, Plaintiffs and Proposed Class members have been injured and suffer continuing injuries.

## COUNT II - 42 U.S.C. § 1983

## VIOLATION OF THE 14th AMENDMENT DUE PROCESS CLAUSE

137.    Plaintiffs repeat and reallege paragraphs 1 through 136, as if fully set forth herein.

138.    RRHA is a "person" within the meaning of 42 U.S.C. § 1983.

139.    Acting under color of state law and through its policies and customs, RRHA has violated, and continues to violate, Plaintiffs' and Proposed Class members' rights secured by 42 U.S.C. § 1437a(a)(3).

140.    Public housing tenant families possess a property interest protected by due process in their subsidized housing, in the right to seek a Hardship Exemption, and in their right to receive a Hardship Exemption when eligible.

141.    Plaintiffs and Proposed Class members have property rights in their leasehold interests, in a system that produces a fair determination of their rent in times of financial hardship, and in the financial resources they use to pay their rent.

142.    As established by the Housing Act and its implementing regulations, 42 U.S.C. § 1437a(a), 24 C.F.R. § 5.630, Plaintiffs and Proposed Class members have legitimate claims of entitlement to consideration for a Hardship Exemption, and to a Hardship Exemption when eligible.

143.    Acting under color of state law, RRHA deprived Plaintiffs and Proposed Class members of these rights without proper notice and a right to be heard. Specifically, RRHA deprived Plaintiffs and Proposed Class members of their right to a fair determination of their eligibility for a Hardship Exemption by failing to notify them in a meaningful and timely manner

of their right to request such an exemption, and by failing to maintain a system of rent calculation that fairly and lawfully determines rent in times of financial hardship, as well as by depriving them of the financial resources they use to pay their rent.

144.    Defendants' actions have violated and continue to violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

145.    The deprivations of Plaintiffs' and Proposed Class members' rights are a consequence of Defendants' systemic policies, customs, and practices.

## COUNT III

## BREACH OF CONTRACT

146.    Plaintiffs repeat and reallege paragraphs 1 through 145, as if fully set forth herein.

147.    RRHA formed binding agreements with Plaintiffs and Proposed Class members upon execution of each respective residential rental agreement ("Residential Rental Agreement").

148.    Each of Plaintiffs' and the Proposed Class members' Residential Rental Agreement is valid and enforceable.

149.    The Residential Rental Agreements explicitly incorporate RRHA's ACOP by reference.

150.    RRHA has breached each Residential Rental Agreement by failing to comply with the ACOP's requirement that it "review all relevant circumstances brought to the RRHA's attention regarding financial hardship as it applies to minimum rent."

151.    RRHA has breached each Residential Rental Agreement by failing to notify tenants of their right to request a Hardship Exemption in its lease termination notices premised on nonpayment of rent.

152.    RRHA has further breached its lease by denying otherwise qualifying tenants their right to the minimum rental payment and, when applicable, a subsequent Hardship Exemption, and causing them financial and other harms.

153.    RRHA has breached each Residential Rental Agreement by failing to comply with federal law regarding the Hardship Exemption, despite RRHA's ACOP's explicit language that "[t]he administration of the RRHA's housing program will also meet the requirements of the Department of Housing and Urban Development (HUD), and all other law, whether currently in effect or later created or amended, which is applicable to the administration of RRHA's low-income public housing program. . . . This ACOP is expressly subordinate to all applicable law."

154.    Plaintiffs have been harmed by RRHA's breach of their Residential Rental Agreements.

## COUNT IV

## UNJUST ENRICHMENT

155.    Plaintiffs repeat and reallege paragraphs 1 through 154, as if fully set forth herein.

156.    In the alternative to their breach of contract claim, Plaintiffs are entitled to recovery under the doctrine of unjust enrichment if the Court determines that there is not an enforceable contract governing Plaintiffs' right to be informed of their right to request a Hardship Exemption and eligible residents' right to receive such exemptions, or that Plaintiffs conferred a benefit on RRHA that was outside of or over and above the benefits contemplated by the Residential Rental Agreement.

157.    Plaintiffs conferred benefits on RRHA by making their rental payments.

158.    RRHA was aware of and received these rental payments from Plaintiffs.

159.    RRHA accepted rental payments from Plaintiffs despite failing to comply with federal law and its own policies regarding the Hardship Exemption, including by failing to inform residents of their right to request a Hardship Exemption, or grant Hardship Exemptions to residents it knew or should have known were eligible for a Hardship Exemption.

160.    It would be inequitable for RRHA to retain these rental payments when it should have informed residents of their right to request Hardship Exemptions and failed to grant exemptions to eligible residents.

161.    It would be inequitable for RRHA to retain these rental payments when it failed to comply with federal housing law and its own policies.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.    Declare that RRHA's policies, practices, acts, and omissions, as set forth above, violate 42 U.S.C. § 1437a(a)(3)(B), and its implementing regulations;

B.    Declare that RRHA's policies, practices, acts, and omissions, as set forth above, have deprived and continue to unlawfully deprive RRHA tenants of property in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

C.    Declare that RRHA has breached its duties under the respective Residential Rental Agreements;

D.    Enter an injunction, without bond (or upon a nominal bond), enjoining RRHA from continuing its Illegal Overcharge Practice, from failing to provide residents meaningful, adequate, and timely notice of their right to request a Hardship Exemption to the minimum rent requirement and the procedures for doing so, and from failing to grant exemptions from the minimum rent when it has knowledge of circumstances requiring the exemption;

E.     Enter an injunction requiring RRHA to take actions to promptly and effectively inform tenants of the Hardship Exemption, including but not limited to, at lease signing, income recertification, adjustment to minimum rent, and upon submission of zero-income affidavits or forms, through means reasonably calculated to actually inform such persons of the exemption and prompt them to apply for it if they believe themselves eligible;

F.     Enter an order requiring Defendant to recalculate the rent of every current and former RRHA public housing resident charged the minimum rent during their tenancy in the last five years and to (1) refund or otherwise credit to the Proposed Class members the difference between the minimum rent and the lesser rent they owed under such recalculation for every month until such time as the Defendant has in place policies and procedures that conform to the law, as well as prejudgment interest; (2) file satisfactions of any money judgments awarded in eviction actions based on nonpayment of rent the tenants did not owe under such recalculation; and (3) immediately correct any debt reported in error to any consumer reporting agency and/or HUD;

G.     Enter an injunction, without bond (or upon a nominal bond), enjoining Defendant from terminating any public housing resident's lease agreement for nonpayment of the minimum rent, from filing any new court action to evict, and requiring Defendant to withdraw any pending lease termination notices and associated terminations of assistance based on nonpayment of the minimum rent until such time as Defendant comes into compliance with the law regarding Hardship Exemptions and corrects past unlawful actions related to the Hardship Exemption;

H.     Enter an order requiring Defendant to pay Plaintiffs' reasonable costs and attorney fees for the prosecution of this action under 42 U.S.C. § 1988;

I.     Certify the Rule 23(b)(2) class defined above and appoint the undersigned attorneys as class counsel;

J.    Certify the Rule 23(b)(3) class defined above and appoint the undersigned attorneys as class counsel; and

K.    Grant such other relief as may be proper and just.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.


Dated: February 20, 2025

Respectfully submitted,


/s/ *George P. Sibley, III*

George P. Sibley, III (VSB No. 48773)
Robert M. Rolfe (VSB No. 15779)
Michael J. Bisceglia (VSB No. 98642)
David W. Tisel (VSB No. 99584)
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
Telephone No.: (804) 788-8200
gsibley@Hunton.com
rrolfe@Hunton.com
mbisceglia@Hunton.com
dtisel@Hunton.com

Catherine Cone (*Pro hac vice* forthcoming)
LEGAL AID JUSTICE CENTER
6402 Arlington Blvd., Suite 1130
Falls Church, VA 22042
(434) 995-9983 Phone
(703) 778-3454 Facsimile
Email: catherine@justice4all.org

Victoria Horrock (VSB No. 94625)
Alex Kornya (VSB No. 100878)
LEGAL AID JUSTICE CENTER
1000 Preston Ave Suite A
(434) 466-2233 Phone
(434) 977-0558 Facsimile
Email: victoria@justice4all.org
Email: alexkornya@justice4all.org

Michaela Ross (VSB No. 95956)
Lauren Beebe King (VSB No. 99143)
LEGAL AID JUSTICE CENTER
626 East Broad Street, Suite 200
Richmond, VA 23219
(434) 284-3643 Phone
(804) 643-2059 Facsimile
Email: michaelaross@justice4all.org
Email: laurenking@justice4all.org

Hannah D. Adams (*Pro hac vice* forthcoming)
NATIONAL HOUSING LAW PROJECT
90 New Montgomery St., Ste. 1015
San Francisco, CA 94105
(415) 546-7000 x. 3503
hadams@nhlp.org

*Counsel for Named Plaintiffs and the putative class*

27